**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **PETER CHEN,**<br><br>**Plaintiff,**<br>**v.**<br><br>**ST. JUDE MEDICAL, LLC, ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC., IRVINE BIOMEDICAL, INC., and DOES 1–50, inclusive,**<br><br>**Defendants.** | **Case No.: SACV 17-00143-CJC(JCGx)**<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND** |

## I. INTRODUCTION

Plaintiff Peter Chen filed this action against Defendants St. Jude Medical, Inc. ("St. Jude"), St. Jude Medical, Cardiology Division, Inc. (together, the "St. Jude Entities"), Irvine Biomedical, Inc. ("IBI"), and Does 1–50, inclusive, in Orange County Superior

Court on December 27, 2016. (Dkt. 1-3 (Declaration of Katherine V.A. Smith) Ex E. [Complaint, hereinafter "Compl."].) Chen asserts six causes of action: (1) wrongful termination; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) violation of California Labor Code Sections 200, 201, 219, and 221; (5) Violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200 *et seq.*; and (6) conversion. (*See generally id.*) Defendants removed the action to this Court on January 27, 2017, on the basis of diversity jurisdiction and fraudulent joinder. (Dkt. 1.) Before the Court is Chen's motion to remand for improper removal. (Dkt. 14 [Motion, hereinafter "Mot."].) For the following reasons, the motion is DENIED.[1]

## II. BACKGROUND

According to the Complaint, Peter Chen is a resident of Irvine, California. (Compl. ¶¶ 1, 8.) In 1995 he co-founded Defendant IBI, which has its principal place of business in California, and served as its president until Defendant St. Jude, a Minnesota corporation, acquired it in 2004. (*Id.*) As part of the acquisition, Chen signed a written employment agreement with IBI and "any of its subsidiaries and affiliates." (*Id.* Ex. A.) Chen alleges that IBI became and remains a wholly-owned subsidiary of St. Jude, and that after the acquisition, Chen remained an "executive employee of IBI, [St. Jude], and/or one or more of their affiliates" through May 2016. (*Id.* ¶¶ 1, 8.) In 2008, St. Jude created the Center for Innovation and Strategic Collaboration ("CISC") in Irvine, and Chen served as its president from 2008 and May 2016. (*Id.* ¶ 10.) Chen was in charge of a project relating to the use of neurostimulators in medical devices. (*Id.*)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for April 10, 2017, at 1:30 p.m. is hereby vacated and off calendar.

In or around November 2015, a "significant percentage" of the CISC employees were terminated. (*Id.*) Chen learned soon after that CISC's budget was being cut to "virtually nothing," and that Defendants "would not approve the hiring of new employees to replace personnel that had been terminated or voluntarily left." (*Id.*) Chen alleges that CISC was effectively being dissolved, its projects discontinued, and that he had been told to cease all ongoing work, including his project concerning neurostimulators. (*Id.*)

Fearing that he would soon lose his own job, Chen and other CISC personnel who believed their jobs were endangered engaged in "some preliminary discussions of their potential post-[St. Jude] futures." (*Id.* ¶ 11.) These discussions apparently "involved a desire to see Chen start another company" and employ some "[St. Jude ]/CISC/IBI" employees who feared they would be terminated. (*Id.*) However, Chen claims that he never started a new company and never employed, or offered to employ, any former or then-current employees of St. Jude, CISC, or IBI. (*Id.*) Chen claims he did not conceal these discussions from Defendants, who "claim they found evidence of such discussions on Chen's company computer, which they always claimed a right to monitor." (*Id.* ¶ 12 (emphasis omitted).)

Chen alleges that he was effectively terminated on May 10, 2016. (*Id.* ¶ 13.) He was "induced" to sign a Separation and Release Agreement in exchange for the promise of approximately six months' paid leave plus a year of salary as severance following the end of the paid leave period. (*Id.*) He alleges that Defendants' true intention at that time was "to try to keep him on the payroll, despite the fact that he had no continuing duties, no access to Defendants' computer systems, and was barred from the office, so that they could use that period to find/confirm some basis to terminate him for cause and thereby cancel/steal over $2 million in [Non-Qualified Stock Options ("NQSOs")] previously granted to him as part of his compensation packages, including over $1.27 million in

fully vested and exercisable NQSOs and in excess of $48,000 in sellable market value of [Restricted Stock Units]." (*Id.* (emphasis omitted).)

On August 12, 2016, he received a letter from St. Jude informing him that he was being terminated for cause for "purportedly misappropriating confidential and proprietary information and assets" of St. Jude, and as a result, Defendants refused to pay the balance of Chen's paid leave time and terminated his unexercised NQSOs. (*Id.* ¶¶ 14, 16.) When Chen objected, Defendants allegedly threatened him with a lawsuit they intended to file in Minnesota. (*Id.* ¶ 17.) Chen believes that Defendants' actions are "partially related to the pending sale of [St. Jude] and its affiliated companies to Abbott Laboratories," in that St. Jude wanted to reduce its liabilities and obligations to current and former employees in advance of the closing of that transaction. (*Id.* ¶ 18.) Chen also contends that after he was terminated for cause, Defendants "repeatedly and forcefully demanded full access to Chen's personal email account, his personal computer and his iPhone, ostensibly for the purpose of confirming whether or not Chen had in fact engaged in the conduct he was alleged to have engaged in." (*Id.* ¶ 19.)

Defendants initiated an action against Chen in Minnesota state court in August 2016 for his alleged attempts to steal St. Jude proprietary information, resources, and personnel and to exploit the confidential neurostimulator project for his own benefit. (Dkt. 1-3 Ex. I.) That litigation is ongoing, and the parties are currently engaged in discovery. (*See* Opp. at 4–5; *id.* at 5 n.3.) On November 7, 2016, Chen filed a complaint against the St. Jude Entities in California state court (Case No. 30-2016-00885316-CU-E-CJC) (the "First Action") for wrongful termination, breach of contract, breach of the covenant of good faith and fair dealing, violation of California Labor Code Sections 200, 201, 219, 221, violation of the UCL, and conversion. (Dkt. 1-3 Ex. A.) The St. Jude Entities removed the First Action to this Court on December 7, 2016 (Case No. 8:16-cv-02178-CJC(JCGx)). Chen dismissed that action without prejudice on December 12,

2016. (*Id.* Ex. D.) Two weeks later, Chen filed this action in state court against the St. Jude Entities and IBI. (Compl.) The parties agree that the operative Complaint in this case is substantially similar to that filed in the First Action, except that this time, IBI is also named as a Defendant. (*See* Mot. at 7; Dkt. 15 [Opposition, hereinafter "Opp."] at 4.)

Defendants removed the present action to this Court on January 27, 2017. (Dkt. 1.) Although Chen and IBI are both California residents, Defendants removed this action on the grounds that IBI was a sham defendant named specifically for the purpose of evading federal jurisdiction. (*See generally* Opp.) Chen then filed the present motion to remand the case, contesting Defendants' characterization of IBI as a sham defendant. (Mot.)

**III. DISCUSSION**

In assessing whether there is proper subject matter jurisdiction, courts disregard the citizenship of a defendant that has been fraudulently joined. *Morris v. Princess Cruises,* Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). "Joinder is fraudulent if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quotation omitted). Conversely, "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Id.* at 1044. Fraudulent joinder must be proven by "clear and convincing evidence," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), and a defendant may present additional facts to show that the joinder is fraudulent, *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). However, in determining whether a defendant was fraudulently joined, all disputed questions of fact and all ambiguities in the controlling state law must be resolved in favor

of remand to state court. *Hunter*, 582 F.3d at 104 at 1042. "'There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion.'" *Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1051 (C.D. Cal. 2013) (quoting *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001)).

Defendants assert that IBI was added as a sham defendant in this case to avoid federal jurisdiction. They state that Chen's "alleged grievances have nothing to do with" IBI, as this case is an employment dispute arising out of Chen's termination by St. Jude eight years after any connection between IBI and Chen was severed. (Opp. at 1.) Defendants also point out that after Chen filed the First Action, the parties began a meet-and-confer process for the St. Jude Entities' anticipated motion to dismiss for *forum non conveniens*, "premised on the mandatory forum-selection provision in the Separation and Release Agreement between the parties that requires all litigation related to Plaintiff's employment by St. Jude to be conducted in Minnesota." (*Id.* at 3.) According to Defendants, they informed Chen that they planned to file that motion on December 14, 2016, and then Chen "abruptly" dismissed the First Action without prejudice on December 12 (five days after it was removed) and re-filed a nearly identical complaint adding IBI a few weeks later. (*Id.* at 3–4.)

Chen, however, insists that the reason he did not name IBI as a Defendant in the First Action was because, at that time, he believed IBI no longer had separate corporate existence. (Mot. at 7.) He claims that he dismissed the First Action after his attorney learned that IBI was still in existence in December 2016, and that if he had known that IBI was still active, he would have named it in the First Action.[2] (*Id.*; Dkt. 14-1 ¶¶ 2–3.)

---

[2] Defendants dispute this, pointing out that in the First Action, Chen's complaint stated that IBI "became *and* remains a wholly owned subsidiary of [St. Jude]." (Opp. at 4 n.2 (emphasis in original).)

Chen's motion for remand turns on whether IBI was his employer or exercised control over his stock options and benefits at the time he was terminated—if not, Chen cannot assert claims of wrongful termination, breach of contract, breach of the covenant of good faith and fair dealing, conversion, various Labor Code violations, and UCL violations against IBI. *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 900 (2008) (wrongful termination can only be asserted against an employer); *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001) (breach of contract requires the existence of a contract); *Prince-Weithorn v. GMAC Mortg., LLC*, No. 11-CV-816-SJO, 2011WL 11651984, at *4 (C.D. Cal. May 5, 2011) ("A claim for breach of the implied covenant cannot survive without the existence of a valid contract."); Cal. Lab. Code § 201(a) ("If an *employer* discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.") (emphasis added); *id.* § 221 ("It shall be unlawful for any *employer* to collect or receive from an employee any part of wages theretofore paid by said employer to said employee.") (emphasis added); *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) ("Conversion is the wrongful *exercise of dominion* over the property of another." (citation omitted) (emphasis added)).[3] "For the purposes of the California Labor Code, courts are instructed to use the definition of 'employer' found in the Industrial Welfare Commission's wage orders. Accordingly, an 'employer' is any person or legal entity 'who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person.'" *Cordell v. PICC Lines Plus LLC*, No.16-CV-1814-TEH, 2016 WL 4702654, at *8-9 (N.D. Cal. Sept. 8, 2016).

Chen vehemently argues that Defendants have provided no evidence that his affiliation with IBI ended in 2008. (Reply at 7–11.) To the contrary, in support of their argument, Defendants provide the following evidence. Chen was the president of IBI

[3] Chen's UCL violations are dependent on his California Labor Code violation claims. (Compl. ¶¶ 57–60.)

when St. Jude acquired the company in 2004, and in connection with that transaction, he entered into a two-year employment agreement with IBI that expired on its own terms in October 2006. (*Id.* at 5 (citing Dkt. 1-3 Ex. E at Ex. A § 1.1).) On September 12, 2006, St. Jude sent a memorandum to Chen stating "We would like you to continue in your role as President of IBI reporting to me beyond the conclusion of your employment contact [sic] on October 7, 2006, with the following 'employment at will' terms and conditions . . ." (Dkt. 1-2 Ex. A.) Chen forwarded this memorandum in an email to another party, stating that the memorandum was "regarding my continued employment with [St. Jude]/IBI as well as my salary adjustment effective October 7, 2006." (*Id.*) Defendants also provide a company memorandum that was distributed to Chen and others in 2008, announcing that Chen had accepted a new role as president of different St. Jude entity (CISC), and that St. Jude was combining IBI with Atrial Fibrillation Division ("AFD"), another St. Jude entity based in Minnesota. (*Id.*; Dkt. 1-2 Ex. B.) AFD's president, Jane Song, was to lead that combination. (*Id.*) Defendants also provide tax forms demonstrating that St. Jude, not IBI, was listed as Chen's employer and was responsible for his compensation and benefits through his termination in 2016. (Dkt. 1-2 Exs. C-1 (W-2 Forms from 2012–2015), C-2 (Statement of Earnings and Deductions).) They provide stock option documents showing that only St. Jude had the ability to affect Chen's stock options, which were all St. Jude stock options (not those of IBI). (Dkt. 15-2 Exs. 1 (Stock Incentive Plan), 2–3 (Stock Grants & Agreements).) Additionally, they point out that Chen's Separation and Release Agreement, dated May 10, 2016, was executed between himself and St. Jude. (Dkt. 1-3 Ex. L at Ex. B.) Finally, they note that one month after his termination in August 2016, Chen submitted a "Request for Employment Information" to St. Jude, where he identified St. Jude as his employer.[4] (Dkt. 1-2 Ex. D; Dkt. 15-2 Ex. 4.)

---

[4] Chen claims that this form was not in his handwriting and was not prepared by him. (Reply at 21 n.7.) However, he does not dispute that he sent this document to St. Jude from his personal Gmail account, so this challenge is unconvincing. (*See* Dkt. 18 at 2, Dkt. 15-2 Ex. 4.)

Chen argues that the only employment agreement he executed was with IBI after it was acquired by St. Jude, and that agreement made it "clear" that it governed his employment with IBI and any other St. Jude entity. (Mot. at 11; Dkt. 16 ("Reply") at 4.) In other words, that agreement expressly contemplates that while employed at IBI, he could also be asked to work for other St. Jude entities. (Reply at 9.) In his reply, he also states that it is "demonstrably false" that he became an at-will employee of St. Jude in 2006, and in support attaches W-2 forms from 2006 through 2008 listing his employer as IBI. (Dkt. 16-1 at Ex. A.) However, these arguments ignore the evidence demonstrating that the IBI employment agreement expired in 2006, at which time his employment continued at IBI for two more years on an at-will basis with different compensation terms. (Dkt. 1-2 Ex. A.) More importantly, in 2008 St. Jude made Chen president of CISC and combined IBI with AFD, based in a different city (Minnesota) and led by a different person (AFD's president).[5] Thus, his argument that his employment with IBI continued on the same general terms after the expiration of the agreement in 2006 is unavailing—the critical date is not 2006, but 2008, when he was clearly removed from IBI. (*See* Mot. at 11; Reply at 13.) Additionally, by Chen's own logic, the fact that his W-2s from 2009 to 2016 identify his employer as St. Jude would bolster Defendants' position. (Dkt. 17-1 Ex. 1.)[6]

Chen also claims that in the Minnesota litigation, Defendants conceded that Chen was still an IBI employee through his termination because they alleged that St. Jude "retained Chen as President of IBI, and Chen has since remained and continued to serve

---

[5] Chen argues that an "honest" reading of the 2008 memorandum announcing his acceptance of the position of CISC president "discloses only IBI's intention to indefinitely extend Chen's employment, while disclosing his 2006–2007 compensation in the hopes Chen would agree to continue his employment with IBI." (Reply at 12 n.3) The Court disagrees with this reading of the document. (*See* Dkt. 1-2 Ex. B.)

[6] Since Chen attached evidence to rebut Defendants' arguments in his reply brief, the Court GRANTS Defendants' request to file a sur-reply in response to such evidence. (Dkt. 18.) Defendants appear to have filed a duplicate of this motion for leave to file a sur-reply, which the Court DENIES AS MOOT. (Dkt. 17.)

as an employee of either IBI, [St. Jude], or a[ St. Jude] affiliate through the present." (Mot. at 10 (citing Dkt. 1-3 Ex. I ¶ 7.) This argument is unpersuasive, as it clearly ignores the use of the word "or"—Defendants simply alleged that Chen was an employee of IBI, St. Jude, *or* a St. Jude affiliate during the relevant time period.

Additionally, Chen claims that it is improper for Defendants to argue that IBI was not his employer during the relevant period because it was St. Jude that terminated him in 2016, because this constitutes a defense and requires the Court to weigh on disputed issues of law and fact, and because Chen has alleged that IBI was his employer through the date of his termination, "which alone is sufficient to support remand." (Reply at 14.) However, "fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence." *Morris*, 236 F.3d at 1068. While Defendants do carry a heavy burden, they have met that burden here, and nothing but Chen's say-so contradicts the clear and convincing evidence they provide.

Finally, Chen disputes Defendants' position that only St. Jude controlled the issuance or cancelation of his stock options by noting that his participation in the stock option program was expressly made as part of his IBI compensation package, and he claims that IBI is legally responsible for clawing back or canceling his stock options. (Reply at 21.) In support, he attaches documentation confirming his stock option plan, but this document only confirms that it was *St. Jude* that granted his stock options, and that all the stock was St. Jude stock—not IBI stock. (*See* Dkt. 16-1 Ex. B.) Thus, his argument that IBI could be liable for clawing back or canceling his stock options is unavailing, because IBI did not issue the stock options, cancel the stock options, or have an ownership interest in the stock options. (*Id.*; Dkt. 15-2 Exs. 1–3.)

//

//

Simply put, Defendants have met their heavy burden of demonstrating that Chen fraudulently joined IBI as a defendant and that their removal of this action was proper. Chen has neither offered nor raised any fact to dispute Defendants' clear and convincing evidence that IBI was not his employer and was not in control of his stock options and employment benefits at the time he was terminated. Therefore, Chen cannot possibly assert his claims against IBI.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is DENIED.

DATED: April 5, 2017

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE